# In the United States Court of Federal Claims

No. 22-201C
(Filed: April 12, 2022)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| WILLIAM F. KAETZ, | \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pro se plaintiff; motion for reconsideration; claim for breach of a plea agreement; claim that the Constitution is a contract; waiver of Fifth Amendment takings claim

William F. Kaetz, Paramus, NJ, pro se.

Christopher L. Harlow, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Senior Judge

Plaintiff William F. Kaetz, proceeding pro se, filed suit in this court on February 22, 2022, alleging that the United States and its "collaborators" breached his plea agreement by not considering his home detention to be part of his term of imprisonment and by failing to return his property.  In its March 8, 2022 decision, the court explained, in accordance with binding precedent, that although a plea agreement is contractual in nature, the United States Court of Federal Claims ("Court of Federal Claims") lacks jurisdiction to entertain a claim for breach of a plea agreement unless the plea agreement "clearly and unmistakably subjects the government to monetary liability for any breach."  Kaetz v. United States, No. 22-201C, 2022 WL 682740, at \*4 (Fed. Cl. Mar. 8, 2022) (quoting Sanders v. United States, 252 F.3d 1329, 1335 (Fed. Cir. 2001)).  Because plaintiff's plea agreement lacks any language obligating the United States to pay money damages to plaintiff in the event of a breach by the United States, the court held that it did not possess jurisdiction over plaintiff's claim for breach of the plea agreement.  The court further held that it lacked jurisdiction over plaintiff's other, related claims.  Accordingly, sua sponte, it dismissed plaintiff's complaint for lack of jurisdiction.

Now before the court is plaintiff's motion for reconsideration, filed pursuant to Rule 59(a)(1)(B) of the Rules of the United States Court of Federal Claims ("RCFC").  "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court."  Yuba Nat. Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990).  And, as a general matter, the court will not grant an RCFC 59 motion for reconsideration unless there has been an intervening change in the controlling law, newly discovered evidence, or a need to correct clear factual or

legal error or prevent manifest injustice. RCFC 59(a)(1)(B); Bd. of Trs. of Bay Med. Ctr. v. Humana Mil. Healthcare Servs., Inc., 447 F.3d 1370, 1377 (Fed. Cir. 2006); Fla. Power & Light Co. v. United States, 66 Fed. Cl. 93, 96 (2005). Plaintiff asserts that his motion is necessary to "correct manifest errors of law and fact upon which the judgment is based." Pl.'s Mot. 1. Specifically, plaintiff argues that the court should not have dismissed his claim for breach of his plea agreement because (1) the Tucker Act does not distinguish between commercial contracts and contracts arising from a criminal case; (2) reading such a distinction into the Tucker Act is a violation of the United States Constitution ("Constitution"), which is a social contract between the government and its citizens; (3) any statements in the precedent relied upon by the court that make such a distinction are mere dicta because they were unnecessary to the courts' holdings; (4) this court has the duty to overrule precedent that makes such a distinction; (5) commercial contract law applies to plea agreements; and (6) due process requires that the parties to a plea agreement be treated the same as the parties to a commercial contract. Plaintiff also contends, for the first time, that he has asserted a viable claim under the Just Compensation Clause of the Fifth Amendment to the Constitution, maintaining that his "physical existence," his "rights," and his "liberty" are private property that is being taken by the United States during his home detention. Pl.'s Mem. 30. Because plaintiff's motion is devoid of merit, there is no need to obtain a response from the United States pursuant to RCFC 59(f).

  The precedent relied upon by the court in determining that it lacks jurisdiction over plaintiff's claim that the United States breached his plea agreement is from the United States Supreme Court ("Supreme Court"), the United States Court of Appeals for the Federal Circuit, and the United States Court of Claims ("Court of Claims"). See generally Santobello v. New York, 404 U.S. 257 (1971); Higbie v. United States, 778 F.3d 990 (Fed. Cir. 2015); Holmes v. United States, 657 F.3d 1303 (Fed. Cir. 2011); Sanders v. United States, 252 F.3d 1329 (Fed. Cir. 2001); Joshua v. United States, 17 F.3d 378 (Fed. Cir. 1994); Kania v. United States, 650 F.2d 264 (Ct. Cl. 1981). Decisions of these courts are binding on the Court of Federal Claims; the court has no authority to overrule them. Coltec Indus., Inc. v. United States, 454 F.3d 1340, 1353 (Fed. Cir. 2006); Strickland v. United States, 423 F.3d 1335, 1338 n.3 (Fed. Cir. 2005). Moreover, the principles from these decisions (aside from Higbie) that the court discussed and applied are not dicta. Indeed, the decision that this court relied upon most heavily, Sanders, concerns "the United States government's alleged breach of an agreement with a criminal defendant," 252 F.3d at 1331, rendering the Sanders court's discussion of such agreements directly relevant to the outcome of that case. And, that the particular agreement in Sanders concerned a criminal defendant's "release on bail after trial," id., and was not a plea agreement, does not render Sanders irrelevant to plaintiff's claim. The principles set forth in Sanders are applicable to all agreements with criminal defendants. See, e.g., Phang v. United States, 388 F. App'x 961, 964 (Fed. Cir. 2010) (per curiam) (applying the principles to the United States' plea agreement with a criminal defendant); Judd v. United States, 345 F. App'x 539, 539-40 (Fed. Cir. 2009) (applying the principles to a criminal defendant's pretrial diversion agreement with the United States); Kania, 650 F.2d at 266 (applying the principles to the United States' purported immunity agreement with a criminal defendant). As the Court of Claims explained in Kania:

> The contract liability which is enforceable under the Tucker Act consent to suit does not extend to every agreement, understanding, or compact which can

> semantically be stated in terms of offer and acceptance or meeting of minds. The Congress undoubtedly had in mind as the principal class of contract case in which it consented to be sued, the instances where the sovereign steps off the throne and engages in purchase and sale of goods, lands, and services, transactions such as private parties, individuals or corporations also engage in among themselves. . . .
>
> . . . . [W]e would deem it possible to make a binding contract subject to Tucker Act jurisdiction, creating a liability for breach of a plea bargaining agreement or one to grant immunity for giving testimony, or to protect a witness. But, in such case, the court would look for specific authority in the [Assistant United States Attorney] to make an agreement obligating the United States to pay money, and spelling out how in such a case the liability of the United States is to be determined. . . .
>
> The need for specificity is the greater because the role of the judiciary in the high function of enforcing and policing the criminal law is assigned to the courts of general jurisdiction and not to this court. It would be reasonable to expect that the court which is to police and, in appropriate cases enforce, agreements for plea bargains, or witness protection, or for immunity, will be the courts in which are or will be pending the criminal prosecutions to which the agreements relate. If this means that money damages for breach are nowhere available, this is the case in any claim area where the Congress has not seen fit to grant its consent to be sued. It is particularly unreasonable to suppose that Congress in enacting the Tucker Act intended for this court to intervene in the delicate and sensitive business of conducting criminal trials. If . . . a future district judge knew his findings [in a criminal case] would by collateral estoppel create a liability for money damages in this court and out of his control, this might influence his willingness to grant the relief [requested by a criminal defendant], to the future disadvantage of [criminal defendants].

650 F.2d at 268-69 (citation omitted). Consequently, the court's dismissal of plaintiff's claim for breach of his plea agreement was not based on an error of law or fact.

Furthermore, there is an entirely separate legal basis for the dismissal of plaintiff's claim that the United States breached the plea agreement. The terms of plaintiff's plea agreement were incorporated into the judgment of the United States District Court for the Western District of Pennsylvania. Therefore, plaintiff's challenge to the terms of his plea agreement is a collateral attack on the district court's judgment. However, the Court of Federal Claims lacks jurisdiction to review the judgments of district courts. <u>Shinnecock Indian Nation v. United States</u>, 782 F.3d 1345, 1352 (Fed. Cir. 2015). As stated by the Supreme Court,

> Congress has prescribed a primary route, by appeal as of right and certiorari, through which parties may seek relief from the legal consequences of judicial judgments. To allow a party who steps off the statutory path to employ . . . [a] collateral attack on the judgment would—quite apart from any considerations of

>fairness to the parties—disturb the orderly operation of the federal judicial system.

U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 27 (1994). Thus, the proper way for plaintiff to challenge the district court's judgment is through a direct appeal of that judgment.

Plaintiff also has identified no error of law or fact in the court's holding that the Constitution is not a contract between himself and the United States. Indeed, he does not offer any precedent, binding or otherwise, suggesting that the Constitution is a contract enforceable against the United States through a claim for money damages, likely because no such precedent exists. See, e.g., Steltz v. United States, No. 19-1210C, 2019 WL 4121085, at *1 (Fed. Cl. Aug. 29, 2019) ("[T]he constitution is not a contract with the United States, the breach of which can be heard under our contract jurisdiction."); Asmussen v. United States, No. 14-825C, 2015 WL 351611, at *2 (Fed. Cl. Jan. 27, 2015) ("Nor can the Constitution be considered an express or implied-in-fact contract concerning which a breach action may be maintained in our court."); Taylor v. United States, 113 Fed. Cl. 171, 173 (2013) (holding that the Constitution is not "a valid contract between [the plaintiff] and the United States"); see also Drake v. United States, 792 F. App'x 916, 920-21 (Fed. Cir. 2019) (per curiam) (holding, in response to the plaintiff's argument that certain alleged constitutional violations were breaches of an implied contract arising from the Constitution, that "even if there were a legal basis for [the plaintiff's] reliance on the U.S. Constitution as an implied contract," the Court of Federal Claims lacks jurisdiction to consider claims for breach of implied-in-law contracts). That the Constitution has been considered to be a social contract does not alter this conclusion. See, e.g., Dumonde v. United States, 87 Fed. Cl. 651, 653 (2009) (recognizing that "the Constitution has been interpreted as a social contract between the Government and people of the United States," but holding that the plaintiff's constitutional claim was "not a contract claim within the meaning of the Tucker Act").

Finally, because plaintiff did not raise his Fifth Amendment takings claim in his complaint, he has waived it. See Bluebonnet Sav. Bank, F.S.B. v. United States, 466 F.3d 1349, 1361 (Fed. Cir. 2006) ("[A]n argument made for the first time in a motion for reconsideration comes too late, and is ordinarily deemed waived and not preserved for appeal."); Four Rivers Invs., Inc. v. United States, 78 Fed. Cl. 662, 665 (2007) (concluding that the plaintiff's new arguments, including "new arguments based on a different interpretation of the facts alleged" in the case, did not "constitute grounds for reconsideration of the court's opinion"). But even if plaintiff timely asserted such a claim, the court would be required to dismiss it because, under the circumstances alleged by plaintiff, his physical existence, unspecified rights, and personal liberty are not private property protected by the Just Compensation Clause. See, e.g., Hurtado v. United States, 410 U.S. 578, 589 (1973) (holding that "[t]he detention of a material witness . . . is simply not a 'taking' under the Fifth Amendment"); Jones v. United States, 440 F. App'x 916, 918 (Fed. Cir. 2011) (per curiam) ("Seizure of convicted prisoners and their personal property are not the kinds of takings that are prohibited by the Fifth Amendment."); Jones v. Phila. Police Dep't, 57 F. App'x 939, 941 (3d Cir. 2003) (holding that the government was entitled to judgment on "the individual plaintiffs' Fifth Amendment [takings] claims for personal injury"); Harris v. United States, No. 16-658C, 2016 WL 6236606, at *3 (Fed. Cl. Oct. 25, 2016) ("Private property under the [Just Compensation Clause] . . . does not include a person's body or the use of a person's body."), aff'd, 686 F. App'x 895 (Fed. Cir. 2017); Stevens v. United States,

No. 09-338C, 2009 WL 3650874, at *4 (Fed. Cl. Oct. 28, 2009) (holding that "a claim relating to wrongful governmental control over a person is not a Fifth Amendment taking claim"), aff'd, 367 F. App'x 158 (Fed. Cir. 2010) (per curiam); Verdone v. United States, No. 04-801C, 2005 WL 6112626, at *3 (Fed. Cl. May 31, 2005) ("Confinement is not a compensable taking of one's person."); Commers v. United States, 66 F. Supp. 943, 945 (D. Mont. 1946) ("[T]o assert that one's body is private property that may be taken by the United States for any governmental purpose of any kind upon the payment of just compensation is to contend for something so far contrary to our theory or government, the relationship of the government and citizens as to be untenable."), aff'd, 159 F.2d 248 (9th Cir. 1947). Rather, given that plaintiff contends that his physical existence, rights, and liberty are being taken as a result of his home detention, plaintiff is not asserting a Fifth Amendment takings claim, but a claim for false imprisonment, which is a tort claim over which the court lacks jurisdiction. See Kaetz, 2022 WL 682740, at *5; accord Perry v. United States, No. 14-587C, 2014 WL 7366083, at *3 (Fed. Cl. Dec. 23, 2014) (treating the plaintiff's claim that "he has a 'property interest' in his body" that was taken by the United States in violation of the Fifth Amendment as a tort claim beyond the court's jurisdiction); Duncan v. United States, No. 04-1691C, 2006 WL 44173, at *3 (Fed. Cl. Jan. 5, 2006) (treating the plaintiff's claims of "violations of property interests in his life and well being" as tort claims beyond the court's jurisdiction).

In short, plaintiff has not asserted any valid basis for the court to reconsider its original decision to dismiss his complaint for lack of jurisdiction. Accordingly, the court **DENIES** plaintiff's motion for reconsideration. Further, the court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an in forma pauperis appeal of this order, or of the court's original decision, would not be taken in good faith because, as alleged, plaintiff's claims are clearly beyond the jurisdiction of this court.[1]

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Senior Judge

---

[1] Section 1915(a)(3) applies to both prisoners and nonprisoners. See, e.g., Wooten v. D.C. Metro. Police Dep't, 129 F.3d 206, 207 (D.C. Cir. 1997) ("The purpose of § 1915(a)(3) is . . . to preclude prisoners (and nonprisoners) from taking appeals in forma pauperis when they attempt to do so in bad faith."); Baugh v. Taylor, 117 F.3d 197, 200 (5th Cir. 1997) (holding that courts "retain the discretion to certify under section 1915(a)(3) that [in forma pauperis] appeals, from prisoners and nonprisoners alike, are not taken in good faith").